UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| DAVID WAYNE SEMIEN | CIVIL ACTION NO. 17-0432 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| HARPO FILMS, INC., ET AL. | MAGISTRATE JUDGE HAYES |

**MEMORANDUM RULING**

Before the Court are Defendants Harpo Films, Inc., The Weinstein Company, LLC, and Metro-Goldwyn-Mayer Distribution Co.'s (collectively "Defendants") Motions to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). See Record Documents 28 and 29. Plaintiff David Wayne Semien ("Plaintiff") opposes the motions. See Record Documents 32 and 34. For the reasons set forth below, Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) is hereby **GRANTED**. Additionally, Defendants' Motion to Dismiss pursuant to Rule 9(b) is hereby **DENIED AS MOOT**.

**I.    BACKGROUND**

Plaintiff, as the succession representative, brings the instant suit on behalf of the estate of Melvin B. Tolson ("Tolson") and several of his heirs. See Record Document 25 at 2. Tolson was the main character in the 2007 film, "The Great Debaters," which depicts Tolson's role at historically-black Wiley College as its debate coach during the 1930s. See id. at 7. According to Plaintiff, the drama, which starred Denzel Washington as Tolson, garnered "tens of millions of dollars," together with numerous awards, and Plaintiff seeks to reap the estate's share of those profits that he alleges was unlawfully deprived of by Defendants. See id. at 8, 14.

On March 22, 2017, Plaintiff filed the instant suit asserting various claims against Defendants, including claims for misappropriation, unjust enrichment, violation of his right of publicity, and "fraud, misrepresentation, detrimental reliance," as well as claims for false endorsement and false advertising pursuant to the Lanham Act and the Louisiana Unfair Trade Practices Act ("LUTPA"), respectively. See Record Document 1; Record Document 25 at 9–13.[1] Plaintiff alleges, *inter alia*, that Defendants willfully exploited Tolson's name, image, and likeness through their allegedly unauthorized production and distribution of the film and, accordingly, seeks monetary damages as compensation. See Record Document 25 at 14.

In response, Defendants filed the instant Motions to Dismiss, seeking dismissal of Plaintiff's claims for failure to state a claim and for failure to plead fraud with particularity. See Record Documents 28 and 29. They make several arguments in favor of dismissing Plaintiff's suit, including their assertions that all of Plaintiff's claims are barred by prescription, that the First Amendment prohibits such claims, and that certain claims are not only unrecognized under Louisiana law, but also strictly personal to the decedent and thus unable to be asserted by his estate after his death. See Record Document 28-1 at 9–10; see also Record Document 69 at 1–2.

On March 26, 2018, the Court stayed this matter in light of a Notice of Suggestion of Pendency of Bankruptcy that was filed regarding one of the defendants, The Weinstein Company, LLC. See Record Document 46. Thereafter, on August 6, 2018, Plaintiff filed a Motion for Relief from Automatic Stay pursuant to 11 U.S.C. § 362(d) with the United

---

[1] Plaintiff added many of his claims when filing his First and Second Amended Complaints. See Record Documents 15 and 25.

States Bankruptcy Court for the District of Delaware, which said court subsequently granted. See Record Document 57; Record Document 63-1 at 2. As a result, this Court lifted its stay of the instant case, thereby rendering the pending Motions to Dismiss ripe for review. See Record Document 66.

## II. LAW AND ANALYSIS

### A. Pleading and 12(b)(6) Motion to Dismiss Standards

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the requirements for pleadings that state a claim for relief, requiring that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The standard for the adequacy of complaints under Rule 8(a)(2) is now a "plausibility" standard found in Bell Atlantic Corp. v. Twombly and its progeny. 550 U.S. 544, 127 S. Ct. 1955 (2007). Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555–56, 127 S. Ct. at 1965. If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for failure to state a claim upon which relief may be granted. In deciding a Rule 12(b)(6) motion to dismiss, a court generally may not "go outside the pleadings." Colle v. Brazos Cty., Tex., 981 F.2d 237, 243 (5th Cir. 1993). However, a court may rely upon "documents incorporated into the complaint by reference and matters of which a court may take judicial notice" in deciding a motion to dismiss. Dorsey v. Portfolio Equities,

Inc., 540 F.3d 333, 338 (5th Cir. 2008).[2] Additionally, courts must accept all factual allegations in the complaint as true. See Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. However, courts do not have to accept legal conclusions as facts. See id.

A court does not evaluate a plaintiff's likelihood for success, but instead determines whether a plaintiff has pleaded a legally cognizable claim. See Thompson v. City of Waco, Tex., 764 F.3d 500, 503 (5th Cir. 2014). Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive such a motion. See Iqbal, 556 U.S. at 678–79, 129 S. Ct. at 1949. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id. Such a dismissal ends the case "at the point of minimum expenditure of time and money by the parties and the court." Twombly, 550 U.S. at 558, 127 S. Ct. at 1966.

Furthermore, a Rule 12(b)(6) motion to dismiss is the proper procedural device to raise a statute of limitations defense. See Bowers v. Nicholson, 271 F. App'x 446, 449 (5th Cir. 2008). A "motion to dismiss may be granted on the basis of prescription if the untimeliness appears from the face of the complaint." Potier v. JBS Liberty Sec., Inc., No. 13-0789, 2014 WL 5449726, at *3 (W.D. La. Oct. 24, 2014). If the plaintiff's claims are prescribed on the face of the pleadings, the plaintiff has the burden of proving the claims

---

[2] The Court also notes that while its review of a Rule 12(b)(6) motion to dismiss is generally limited to the plaintiff's complaint, documents attached by a defendant are properly considered "if they are referred to in the plaintiff's complaint and are central to her claim," and "[i]n so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." Carter v. Target Corp., 541 F. App'x 413, 416–17 (5th Cir. 2013) (citations omitted).

are not prescribed. See, e.g., Sims v. Am. Ins. Co., 12-204 (La. 10/16/12), 101 So. 3d 1, 4 (citation omitted).

### B.     Whether Plaintiff's Claims Have Prescribed

The Court first addresses whether Plaintiff's claims alleged in the Second Amended Complaint are barred by prescription. At the outset, the Court notes (and Plaintiff concedes) that all of Plaintiff's claims, with the possible exceptions of his detrimental reliance[3] and unjust enrichment claims,[4] are subject to Louisiana's one-year prescriptive period for tort claims; this period "commences to run from the day injury or damage is sustained," La. C.C. art. 3492. See, e.g., Capdeboscq v. Francis, No. 03-0556, 2004 WL 1418392, at *1 n.2 (E.D. La. June 23, 2004) (noting that misappropriation and right of publicity claims are subject to a one-year prescriptive period); Snowizard, Inc. v. Robinson, No. 11-0515, 2011 WL 2681197, at *9 (E.D. La. July 8, 2011) (applying LUTPA's one-year statute of limitations to Lanham Act claims); Clarke v. Constellation Brands, Inc., 348 F. App'x 19, 22 (5th Cir. 2009) ("[t]he prescriptive period for fraudulent misrepresentation . . . is one year and begins to run from the date injury of damage is sustained.").

The primary issue in dispute relates to whether the continuous tort doctrine applies to Defendants' alleged actions, thereby preventing Plaintiff's tort claims from being time-barred. According to this doctrine, a continuing tort is one in which "the operating cause

---

[3] The Court also notes that to describe Plaintiff's sixth cause of action, listed in the Second Amended Complaint as "Fraud, Misrepresentation, Detrimental Reliance," as imprecise would be an understatement. Record Document 25 at 13. Notwithstanding, the Court construes Plaintiff's misrepresentation claim as subsumed within his fraud claim, all of which will be addressed separately from his detrimental reliance claim.
[4] These claims are further addressed below in Sections II.C and II.D, infra.

of injury is . . . continuous . . . and gives rise to successive damages." Miller v. Conagra, Inc., 08-21 (La. 9/8/08), 991 So. 2d 445, 456 (citation omitted). "A continuing tort is occasioned by [ongoing] unlawful acts, not the continuation of the ill effects of an original, wrongful act." Caldwell Wholesale Co., L.L.C. v. R.J. Reynolds Tobacco Co., 781 F. App'x 289, 294 (5th Cir. 2019) (quoting Crump v. Sabine River Auth., 98-2326 (La. 6/29/99), 737 So. 2d 720, 728). "When . . . damaging conduct continues, prescription runs from the date of the last harmful act." S. Cent. Bell Tel. Co. v. Texaco, Inc., 418 So. 2d 531, 532 (La. 1982).

Plaintiff argues that his claims have not prescribed because they allege "continuous torts (or alternatively a series of discrete torts, each giving rise to a new prescriptive period)." Record Document 34 at 5. According to Plaintiff's theory, the operating cause of injury for these continuous torts arises from not just the initial release and distribution of the film, but also the continued marketing and sale of the film, all of which "continue to enrich the defendants at [his] expense." Id. Defendants respond that Plaintiff's alleged injury was sustained (and, thus, the prescriptive period commenced to run) in December of 2007 when the film was first released. See Record Document 35 at 1. They contend that because Plaintiff's claims prescribed a year from that date in December of 2008, Plaintiff's claims are clearly prescribed on the face of the complaint, which Plaintiff did not file until March of 2017. See Record Document 28-1 at 13–14; see also Record Document 1 at 1.

In the case at hand, the Court finds that the actions alleged in Plaintiff's complaint do not constitute continuous torts for purposes of prescription. Contrary to Plaintiff's assertion, the operating cause of his alleged injury is not the continuing marketing and

distribution of the film but rather the initial release of the film itself. Furthermore, it is clear that any marketing or distribution of the film occurring subsequent to the film's release amounts to, at most, the "continuation of the ill effects" of said release. Crump v. Sabine River Auth., 98-2326 (La. 6/29/99), 737 So. 2d 720, 728. Thus, the prescriptive period for Plaintiff's claims commenced to run no later than the date of the film's theatrical release in December of 2007 and ended one year from that date. Here, because Plaintiff did not file his initial complaint until March of 2017, each of Plaintiff's aforementioned claims subject to a one-year prescriptive period are therefore barred by prescription.

While Plaintiff relies on the decision in Guidry v. Louisiana Lightning, LLC, No. 15-6714, 2016 WL 3127256 (E.D. La. June 3, 2016) in support of his position, the Court finds that case distinguishable from the instant matter. There, the plaintiff brought clams alleging violations of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), which was enacted to prevent "cybersquatting," or the improper registration or use of a domain name for profit. See Guidry, 2016 WL 3127256, at *4. The court held that because the plaintiff alleged that the defendants "continue to violate the ACPA by using and maintaining the [] website," such actions constituted continuous torts. Id. (emphasis added). In contrast, the tort Plaintiff complains of in this case was complete upon the film's initial release, and the continued distribution and marketing of the film thereafter does not prevent Plaintiff's claims from being time-barred.[5]

---

[5] While both parties make arguments as to whether the First Amendment bars Plaintiff's claims, in addition to whether Plaintiff's right of publicity claim is recognized under Louisiana law, the Court declines to address these issues due to its finding that such claims are barred by prescription.

### C. Detrimental Reliance Claim

Regarding Plaintiff's detrimental reliance claim, both parties dispute whether the claim is subject to Louisiana's one-year prescriptive period for tort claims or its ten-year prescriptive period for contract actions. Under Louisiana law, "[t]he correct prescriptive period to be applied in any action depends on the nature of the action; it is the nature of the duty breached that should determine whether an action is in tort or in contract." Terrebonne Parish Sch. Bd. v. Mobil Oil Corp., 310 F.3d 870, 886 (5th Cir. 2002). Furthermore, the mere presence of a contractual relationship does not alone make the cause of action contractual. See, e.g., Trinity Universal Ins. Co. v. Horton, 33,157 (La. App. 2d Cir. 4/5/00), 756 So. 2d 637, 638.

In this case, the Court need not address the issue regarding which prescriptive period applies to Plaintiff's detrimental reliance claim because, as further explained below, Plaintiff's allegations fail to meet the elements for this claim to begin with. In order to state a cause of action for detrimental reliance under Louisiana law, a plaintiff must establish four elements: (1) the defendant made a representation; (2) the plaintiff justifiably relied on the representation; and (3) the plaintiff changed its position to its detriment based on the reliance. See, e.g., Nola Fine Art, Inc. v. Ducks Unlimited, Inc., 88 F. Supp. 3d 602, 611 (E.D. La. 2015); La. C.C. art. 1967. Courts have stated that claims for detrimental reliance are "not favored in Louisiana" and, therefore, "must be examined carefully and strictly." In re Ark-La-Tex Timber Co., Inc., 482 F.3d 319, 334 (5th Cir. 2007) (citing May v. Harris Management Corp., 04-2657 (La. App. 1st Cir. 12/22/05), 928 So. 2d 140, 145).

Plaintiff alleges that "Harpo staffers told family members, 'we are going to take care of you and the family,'" Record Document 25 at 9 (quotations omitted), and that as a result, "the family felt it was unnecessary to hire lawyers to draw up contracts . . . or to file suit against the defendants," Record Document 34 at 25. However, the Court finds that these allegations do not demonstrate a change in position for purposes of a detrimental reliance claim. Plaintiff's contention that the family would have taken some hypothetical course of action but for Defendants' alleged promise has been rejected by Louisiana courts previously facing such arguments, and the same result applies here. See Garber v. Badon & Ranier, 07-1497 (La. App. 3d Cir. 4/2/08), 981 So. 2d 92, 105; see also Moroux v. Toce, 06-831 (La. App. 3d Cir. 11/2/06), 943 So. 2d 1263, 1272. Accordingly, Plaintiff's detrimental reliance claim fails as a matter of law.[6]

### D. Unjust Enrichment Claim

Finally, Plaintiff asserts a last-ditch attempt at recovery under the theory of unjust enrichment. This remedy is subsidiary in nature and is "only applicable to fill a gap in the law where no express remedy is provided." Walters v. MedSouth Record Mgmt., LLC, 10-351 (La. 6/4/10), 38 So. 3d 241, 242 (quotations omitted). Even pleading a tort claim prevents a plaintiff from recovering for unjust enrichment. See Wiggins v. Chesapeake Energy Corp., No. 12-0541, 2012 WL 3597131, at *2 (W.D. La. Aug. 20, 2012). Further,

---

[6] Furthermore, Plaintiff's allegation that the family "understood from the dealings with [Defendants]" that they would be compensated monetarily for "allowing [Defendants] to produce, market, and profit" from the film is likewise insufficient to support a detrimental reliance claim. Record Document 25 at 8. Considering the governing case law, it can hardly be said that Plaintiff's alleged "understanding" is a reasonable or justifiable reliance. See, e.g., Active Mortg., LLC v. Trans Union, LLC, No. 09-0986, 2010 WL 4627730, at *4 (M.D. La. Nov. 4, 2010) ("The representation upon which plaintiff relies must not be vague and plaintiff's reliance cannot simply be based on assumption.").

the fact that a plaintiff does not successfully pursue another available remedy, whether due to prescription or otherwise, does not permit him to recover under the theory of unjust enrichment. See Walters, 38 So. 3d at 242. Here, Plaintiff confusingly argues that this theory applies as "no other satisfactory remedy [is] available to [him]," despite the arguments he continues to assert in support of his various other claims discussed above. Record Document 25 at 11. Regardless, because Plaintiff has clearly pled delictual claims in the Second Amended Complaint, and notwithstanding the Court's finding that such claims have prescribed, Plaintiff's unjust enrichment claim is likewise barred.

### III. CONCLUSION

Based on the foregoing reasons, Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) (Record Document 28) is **GRANTED** and all of Plaintiff's claims are hereby **DISMISSED WITH PREJUDICE**. Additionally, Defendants' Motion to Dismiss pursuant to Rule 9(b) (Record Document 29) is hereby **DENIED AS MOOT**.

A judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 21st day of January, 2020.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT